UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS WALLACE,<br>　　*Petitioner*, | No. 3:20-cv-01265 (KAD) |
| v. | |
| DIANE EASTER,<br>　　*Respondent*. | November 30, 2020 |

**MEMORANDUM OF DECISION RE:
RESPONDENT'S MOTION TO DISMISS THE PETITION (ECF NO. 8)**

Kari A. Dooley, United States District Judge:

　　Pending before the Court is an emergency motion for compassionate release brought by Petitioner Thomas Wallace ("Wallace" or the "Petitioner") pursuant to 28 U.S.C. § 2241. (ECF No. 1.) On September 16, 2020, the Court ordered the United States to show cause why the motion, which it construed as a petition for a writ of habeas corpus, should not be granted. (ECF No. 5.) On September 29, 2020 the Court granted the motion of Respondent Diane Easter ("Respondent" or "Easter") to substitute Easter, in her official capacity as the Warden of FCI Danbury, where Wallace is detained, as the proper Respondent in this matter in place of the United States. (ECF No 9.) Respondent has moved to dismiss Wallace's petition on a number of grounds. (ECF No. 8.) Following the filing of Respondent's motion to dismiss, Petitioner filed a response to the Court's Order to Show Cause (ECF No. 12), which appears to clarify the basis for the petition for a writ of habeas corpus and which the Court construed as an amendment to the original petition. The Court accordingly ordered the Respondent to file a supplemental brief to address Petitioner's more recent allegations, which the Court has reviewed. (ECF No. 15.) The Court also afforded Petitioner the opportunity to respond to Respondent's supplemental brief by November 20, 2020

1

(*see* ECF No. 14), although Petitioner did not file such a response.  For the reasons that follow, the motion to dismiss is GRANTED.

**Background and Allegations**

On November 9, 2017, Petitioner was sentenced to 156 months of incarceration following his conviction for conspiracy to commit kidnapping in the United States District Court for the District of Massachusetts.  (*See* Judgment, *United States v. Wallace*, Case No. 1:12-cr-10264-RGS-3, ECF No. 1056 (D. Mass. Nov. 9, 2017).)  He is currently serving his sentence at FCI Danbury, where he alleges that two out of 20 inmates recently transferred to the facility have tested positive for COVID-19. (Pet. at 2.)  Petitioner further alleges that additional inmates are displaying symptoms of the virus and expresses concern that he may never return home if he remains in the custody of the Bureau of Prisons ("BOP").  The Petitioner cites problems with his asthma and mental health conditions and describes himself in conclusory form as suffering from inadequate and negligent medical care at the hands of the BOP.  He asserts that he "asked his case manager to review his status for home confinement and was told no because he is not a priority." (*Id.*)  In his initial motion, Petitioner also requests the appointment of counsel, which the Court denied without prejudice.[1]  (*See* Order to Show Cause at 2–3.)

After the Court issued its Order to Show Cause and the Respondent filed her motion to dismiss, Petitioner filed a response clarifying the basis for some of his claims.  Petitioner alleges that he has "numerus[sic] medical conditions that are being neglected daily and my health is depleting the longer I go untreated."  (Am. Pet. at 2.)  Specifically, he alleges that he has "found numerus[sic] large masses on my testicals[sic] that cause me immense pain" but has been denied

---

[1] As the Court noted in its Order to Show Cause, the sentencing court in Petitioner's underlying criminal case denied Petitioner's counseled motion for a reduction in sentence, which Petitioner filed amidst the current public health crisis, and this Court lacks authority to review that determination or to modify Petitioner's term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).

treatment and was "told it may be 2 months or longer before I will be sent to a[n] oncologist to see if I have cancer and have a biopsy done." (*Id.*)  During a doctor's visit at the facility, Petitioner alleges that his blood pressure was 187/96 but he did not receive follow up despite this high reading.  He further alleges that after begging medical staff to take his blood pressure again on September 18, he received a reading of 152/105 and was informed that he had stage 3 hypertension and was at a high risk of contracting COVID-19.  (*Id.* at 3.)  Yet Petitioner asserts that he has not received treatment for his hypertension, and that he additionally lost 30 pounds in two months and developed a rash on his foot, which he believes could be a possible side effect from the virus and may be affecting his reproductive organs.  (*Id.* at 3–4.)  Petitioner avers that he is "scared for my life and feel if not treated and removed from incarceration I will either have permanent damage or I will die before I make it home to my 2 children," and further represents that he is afflicted by PTSD, anxiety, and bipolar disorder.  (*Id.* at 4.)  Petitioner also presents various alleged statistics regarding the coronavirus and its impact on prison populations generally and alleges that the BOP has been engaged in destroying inmates' medical records to cover up the widespread neglect of inmates in the face of the pandemic.  He renews his request that he be appointed counsel to assist with the filing of his Section 2241 petition and has filed a financial statement to demonstrate that he is unable to afford an attorney.  (ECF No. 13.)

**Legal Standard**

The "Court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018); *see also, e.g.*, *Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2017 WL 855795, at *5–6 (D. Conn. Mar. 3, 2017)

(reviewing motion to dismiss Section 2241 petition pursuant to Fed. R. Civ. P. 12(b)(1) and (12)(b)(6)).

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the complaint's factual allegations as true and must draw inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). A motion filed pursuant to "Rule 12(b)(6) must be decided on 'facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.'" *Lunardini v. Mass. Mut. Life Ins. Co.*, 696 F. Supp. 2d 149, 155 (D. Conn. 2010) (quoting *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)) (brackets omitted). The "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because "Mr. [Wallace] filed the petition for writ of habeas corpus *pro se*, the Court must construe his filings 'liberally' and interpret them 'to raise the strongest arguments that they suggest.'" *Anderson*, 2017 WL 855795, at *6 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)).[2]

---

[2] While Respondent's motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6), her supplemental memorandum cites to materials outside of the petition, including Petitioner's medical records, which she has filed as an exhibit under seal. (*See* ECF No. 17.) Certain aspects of Respondent's supplemental memorandum might be more appropriately considered as a substantive response to the merits of the habeas petition as opposed to a basis for a Rule 12(b)(6) dismissal. The Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules"), which may also be applied to a habeas petition brought pursuant to Section 2241 per Rule 1(b), permit this Court to direct that the record be expanded in the event the petition is not dismissed, provided the opposing party is afforded an opportunity to admit or deny the correctness of the additional materials. *See* Rule 7(a), (c). Because the Court concludes that dismissal is warranted pursuant to Rule 12(b)(6), as discussed below, the Court does not address whether expansion of the record is warranted for purposes of addressing the merits of the Petition.

**Discussion**

    **Settlement in *Whitted v. Easter***

Respondent principally asserts that Petitioner's claims are precluded by a July 27, 2020 settlement agreement reached in the matter of *Whitted v. Easter*, No. 3:20-cv-00569 (MPS) (filed D. Conn. Apr. 27, 2020) (the "Settlement Agreement"). In this multi-party habeas class action (the "FCI Danbury Litigation"), several inmates incarcerated at FCI Danbury alleged that Easter "was violating the Eighth Amendment rights of FCI Danbury prisoners by (i) failing to make full use of her home confinement and compassionate release authority, and (ii) failing to implement adequate measures to prevent the continued spread of COVID-19 at FCI Danbury." (Settlement Agreement at 1, Resp.'s Ex. B, ECF No. 15-2.[3]) Respondent has denied the veracity of these allegations. (*Id*.) Following Judge Shea's issuance of a Temporary Restraining Order, which "provisionally certif[ied] a putative subclass of medically vulnerable to COVID-19 FCI Danbury inmates and set[] forth standards for determining their suitability for home confinement release," Easter filed an initial list comprised of 314 inmates identified as prospective members of the medically vulnerable class (the "List One Inmates"). (*Id*. at 2.) A second search of BOP records yielded an additional list of 125 inmates that Respondent included in the medically vulnerable class ("List Two Inmates"). (*Id*. at 2–3.) Against this background, the Settlement Agreement states that it:

> is entered into on behalf of all members of the Medically Vulnerable Class, consisting of any person incarcerated at FCI Danbury anytime from the Effective Date until the termination date of this Agreement, October 31, 2021, unless otherwise modified by the parties pursuant to the terms of this Agreement, who either: (a) is a List One Inmate or List Two inmate, or (b) possesses one or more underlying medical conditions which, according to current CDC guidance (i.e., the CDC guidance in effect at the time of the individual's

---

[3] "The Court may take judicial notice of public documents on a motion to dismiss to determine whether claims are barred by prior litigation." *Deylii v. Novartis Pharm. Corp.*, No. 13-CV-06669 (NSR), 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (quotation marks omitted). "Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement." *Id*.

home confinement review), either (i) places that inmate at increased risk of severe illness from COVID-19 ("Tier 1 medical conditions"); or (ii) might place that inmate at an increased risk of severe illness from COVID-19 ("Tier 2 medical conditions").

(*Id*. at 4–5 § 1.)

At the time of the Settlement Agreement's execution, Respondent had already considered all List One Inmates for home confinement and agreed to review all List Two Inmates for home confinement to the extent that she had not already done so. (*Id*. at 5–6 §§ 2–3.) The Settlement Agreement also "recognize[s] that there may be certain inmates, including future inmates, who are not List One Inmates or List Two Inmates but who nevertheless may already be or may in the future become members of the Medically Vulnerable Class ('Non-List Medically Vulnerable Class Inmates' or 'Non-List Inmates')." *Id.* at 3. With respect to these Non-List Inmates, the Settlement Agreement provides protocols for adding these inmates to the Medically Vulnerable Class so that they will be considered for home confinement. (*See id*. at 6–9 §§ 4–6.) Finally, as relevant here, the Settlement Agreement contains a "Resolution and Release of Claims" section which provides:

> The named Petitioner and all members of the Medically Vulnerable Class, as defined in Section 1, individually and [on] behalf of all their respective heirs, beneficiaries, successors and assigns, in consideration of the benefits of this Agreement, release and forever discharge the Respondent and BOP, and all their respective present and former officers, employees, agents, heirs, successors and assigns, from all actions, causes of action, suits, claims, or controversies, for any and all forms of non-monetary relief arising from or based on either: (i) any denial of home confinement or exercise of the BOP's statutory authority to transfer prisoners to home confinement which may be brought during the time this Agreement is in effect, except as otherwise provided under this Agreement, or (ii) any acts or omissions alleged or that could have been alleged in the Action relating to the COVID-19 pandemic occurring prior to the Effective Date. . . .

(*Id*. at 12 § 16.) The Settlement Agreement is to remain in effect until October 31, 2021 unless otherwise modified, shortened, or extended by mutual consent of the parties. (*Id*. at 13 § 17.) Judge Shea approved the Settlement Agreement on September 18, 2020. (Order, *Whitted v. Easter*, No. 3:20-cv-00569 (MPS), ECF No. 221 (D. Conn. Sept. 18, 2020).)

6

Initially, it did not appear that Petitioner's conditions placed him within the Medically Vulnerable Class defined in the Settlement Agreement. However, upon further review of Petitioner's amended allegations (Am. Pet. at 3), and his medical records, it appears that Petitioner was diagnosed with hypertension on September 30, 2020. (*See* Resp's. Supp. Br. at 1.) "Considering Petitioner has now been diagnosed with hypertension, which is a Tier 2 CDC risk factor," Respondent represents that "he will be accepted as a member of the medically vulnerable class and is bound to the Settlement Agreement reached in the FCI Danbury Litigation." (Resp's. Supp. Br. at 1–2.) As Respondent further notes, the Settlement Agreement will entitle Petitioner for expedited review for home confinement under the protocols set forth therein.

As cited above, the "Resolution and Release of Claims" provision provides that members of the Medically Vulnerable Class will have released any claims seeking non-monetary relief against Respondent based on "any denial of home confinement or exercise of the BOP's statutory authority to transfer prisoners to home confinement which may be brought during the time this Agreement is in effect, except as otherwise provided under this Agreement." (Settlement Agreement at 12 § 16.) And as Respondent emphasizes, the Settlement Agreement further provides that "[t]he Home Confinement Committee's substantive determination of whether to place any particular member of the Medically Vulnerable Class on home confinement shall not be subject to judicial review" save for certain exceptions that allow Judge Shea to order the BOP's reconsideration of a home confinement denial that do not appear to be applicable here.[4] (*Id*. at 16 § 23f.)

---

[4] Specifically, the Settlement Agreement contemplates that Judge Shea may order the reconsideration of a home confinement denial that is based upon erroneous facts or a failure to comply with the Settlement Agreement. As Petitioner has only recently been rendered a member of the Medically Vulnerable Class, it is not clear whether the Petitioner has been reviewed for home confinement at the institutional level or by the Home Confinement Committee, and thus his claims under the applicable provisions of the Settlement Agreement may be premature.

Thus, based on Respondent's determination that Petitioner's hypertension diagnosis places him within the Medically Vulnerable Class identified in the FCI Danbury Litigation, the Court agrees that Petitioner is bound by the Settlement Agreement. Because the petition for habeas corpus invariably challenges the BOP's failure to grant Petitioner release to home confinement and/or the exercise of the BOP's statutory authority to transfer Petitioner to home confinement, and because the Settlement Agreement otherwise prohibits judicial review of the BOP Home Confinement Committee's determinations, the petition is barred by the Settlement Agreement's terms. Petitioner must instead seek relief through the avenues prescribed by the Settlement Agreement. Indeed, because Petitioner does not seek *any* relief outside of non-monetary relief in the form of immediate release to home confinement, the Settlement Agreement precludes Petitioner's habeas petition in its entirety. The Court therefore does not address the alternate bases for dismissal presented in Respondent's motion.

Finally, the amended petition reasserts Petitioner's motion for the appointment of counsel, which, as noted previously, the Court denied without prejudice. Having concluded that Petitioner is a member of the Medically Vulnerable Class under the Settlement Agreement, Petitioner may contact class counsel in the FCI Danbury Litigation in connection with his request for home confinement review or any claims he may wish to make under the Settlement Agreement. Because this Court denies the petition for a writ of habeas corpus in light of the Settlement Agreement, Petitioner's request for individual counsel in connection with the instant petition is denied.

**Conclusion**

For the foregoing reasons, the Respondent's motion to dismiss is GRANTED. The Court anticipates that having now identified Petitioner as a member of the Medically Vulnerable Class, Respondent will refer Petitioner for home confinement review consistent with the protocols set

forth in the Settlement Agreement if she has not done so already.  The Clerk of the Court is directed to close this case.

    **SO ORDERED** at Bridgeport, Connecticut, this 30th day of November 2020.

                                    */s/ Kari A. Dooley*
                                    KARI A. DOOLEY
                                    UNITED STATES DISTRICT JUDGE